NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CARGILL GLOBAL TRADING, | : | |
| Plaintiff, | : | **OPINION** |
| v. | : | Civ. No. 03-5920 (WHW) |
| APPLIED DEVELOPMENT COMPANY, ESSEX & SUSSEX ASSOCIATES, L.P., and DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | : | |
| Defendants. | : | |

**Walls, District Judge**

Plaintiff Cargill Global Trading ("Cargill") moves the Court pursuant to Fed.R.Civ.P. 54(b) for an order clarifying its January 5, 2005 opinion (the "Order") dismissing Count One of Cargill's complaint against the Department of Housing and Urban Development ("HUD").

**BACKGROUND AND PROCEDURAL HISTORY**

In 1993, defendants Applied Development Company ("ADC") and its partner Essex & Sussex Associates, L.P ("Essex") (collectively, the "Private Defendants") acquired a property (the "Property") in Spring Lake, New Jersey, with the aim of developing it into a "congregate residence for independent seniors."  In November 2000, Essex obtained a 40-year loan (the "Loan") from Berkshire Mortgage Finance Bethesda Limited Partnership ("Berkshire") to finance the project, which was backed by a mortgage note on the Property given to Berkshire by Essex (the "Mortgage Note").  ADC was not a party to the Mortgage Note.  The Mortgage Note included a rider that limited Essex's right to prepay (the "Prepayment Lockout") the Loan until

**NOT FOR PUBLICATION**

December 31, 2006.  The Prepayment Lockout made it more likely that the holder of the mortgage, or a security backing the mortgage, would realize consistent interest income on the Mortgage Note.  The interest rate on the Loan was 7.83%.

The Loan was insured by HUD pursuant to Section 221(d)(4) of the National Housing Act, which authorizes HUD to help private industry provide housing for certain designated purposes.  Specifically, the Loan was backed by securities issued by the Government National Mortgage Association ("Ginnie Mae").  Under the Mortgage Note and 24 C.F.R. § 200.87(d), HUD was authorized to release Essex from the Prepayment Lockout if it found that prepayment would "avoid a mortgage insurance claim and [be]...in the best interest of the Federal Government."

Cargill was not a participant in the making or securing of the Loan, but in 2000 Cargill purchased a security backed by the Mortgage Note (the "Security").  Cargill states that it relied on the Prepayment Lockout when it purchased the Security.

The Private Defendants began renovations of the Property in January 2001 and opened the Property for occupancy in May 2002.  The parties dispute whether the Private Defendants used their best efforts to market and rent the Property and whether the Property was profitable as a retirement residence.  In December 2002, the Private Defendants determined that the Property should be offered to the public as a condominium project.  A condominium project would necessitate a refinancing of the Property, which would require HUD's override of the Prepayment Lockout so that Essex could repay the Loan to Berkshire.

**NOT FOR PUBLICATION**

On December 17, 2002, ADC asked HUD to override the Prepayment Lockout. In its letter to HUD, ADC represented that the Property was not performing as originally expected and that the conversion to condominiums was necessary to avoid a "likely default" on the Loan. Berkshire supported ADC's decision, and Essex began negotiations with Fleet Real Estate Finance for financing of the condominium conversion.

In February 2003, HUD advised ADC that it would not override the Prepayment Lockout because it could only consider an override if the mortgage was in default, and suggested that ADC negotiate with Cargill for permission to prepay the Loan. ADC offered Cargill $750,000 in exchange for its permission to prepay the Loan, which Cargill rejected. Cargill states that it was willing to continue negotiations, but the parties did not reach an agreement. In April 2003, Essex defaulted on the Loan. Cargill contends that the default was manufactured to release Essex from its obligations under the Mortgage Note. ADC argues that the default was inevitable due to the Property's poor performance. ADC notified HUD of the default and in June 2003, and HUD granted ADC's request and exercised its authority to override the Prepayment Lockout. In June 2003, Essex repaid the balance of the Loan. As a result, Cargill contends that it lost more than $5 million in expected interest payments on the Security.

On January 5, 2005, this Court dismissed Count One of Cargill's complaint against HUD, finding that a declaratory judgment that the HUD's actions were illegal would not directly address Cargill's injuries.

**DISCUSSION**

Cargill asks the Court to clarify its Order to confirm that the Court will review HUD's

NOT FOR PUBLICATION

actions pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 et seq. In its motion, Cargill claims to understand that the Court will review HUD's action despite HUD's absence as a party in this suit. Cargill further claims that this "understanding" stems from its belief that an administrative review of HUD's actions would provide an alternative theory of recovery in its suit against the Private Defendants and that the Court neglected to consider this argument when it granted HUD's motion to dismiss.

In its Order, the Court concluded that a declaratory judgment that HUD's actions were illegal would not directly address Cargill's injuries because Cargill did not seek money damages from HUD, and it would be impossible at this point to reverse the effects of HUD's actions. The Court also found that, although a declaratory judgment might be helpful to Cargill in its suit against the Private Defendants, it was not a "necessary first step" on a path that would lead to full recovery for its injuries, as required by Telephone and Data Systems, Inc. v. FCC, 19 F.3d 42, 47 (D.C. Cir. 1994). For this reason, the Court found that Cargill did not have standing to sue HUD and Cargill's claim against HUD was dismissed. Nothing in the Order suggests a ruling that Cargill's standing to seek review under the APA would be different. See Motor Coach Indus., Inc. v. Dole, 725 F.2d 958, 963 (4th Cir. 1984) (recognizing that standing to assert a claim under the APA requires that "the alleged injury must be such that it likely would be redressed by a favorable decision").

What Cargill really seeks is reconsideration of its argument that a judicial finding of improper action by HUD is a "necessary first step on a path" that would likely lead to redress of its injuries. Cargill argues that a determination that HUD's action was arbitrary and capricious

-4-

**NOT FOR PUBLICATION**

would "effectively reinstate the prepayment prohibition in the mortgage loan and render the Private Defendants' conduct, among other things, a breach of conduct." Pl's Motion at 2. If Cargill can establish that the Private Defendants breached the mortgage loan contract, Cargill may be entitled to recover as a third-party beneficiary of that contract. See Order at 8.

Under Fed. R. Civ. P. 59(e), a litigant may move to alter or amend a judgment within ten days of its entry. Similarly, Local Civil Rule 7.1(g) allows a party to seek a motion for reargument or reconsideration of "matters or controlling decisions which counsel believes the Judge or Magistrate Judge has overlooked."  The Third Circuit holds that the "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986).

Reconsideration motions, however, may not be used to relitigate old matters, nor to raise arguments or present evidence that could have been raised before the entry of judgment. Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2810.1. "A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden. ' " G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990) (quoting Carteret Savings Bank, F.A. v. Shushan, 721 F. Supp. 705, 709 (D. N.J. 1989), appeal dismissed, 919 F.2d 225 (3d Cir. 1992)).

Such motions will only be granted where (1) an intervening change in the law has occurred, (2) new evidence not previously available has emerged, or (3) the need to correct a

**NOT FOR PUBLICATION**

clear error of law or prevent a manifest injustice arises. North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995). Because reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to these rules are to be granted "sparingly," Maldonado v. Lucca, 636 F. Supp. 621 (D.N.J. 1986); Charles A. Wright, Arthur R. Miller & Mary Kay Kane, supra, at § 2810.1, and only when "dispositive factual matters or controlling decisions of law" were brought to the court's attention but not considered. Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

The Court declines to reconsider whether APA review HUD's action would constitute a "necessary first step" on the road to full recovery because Cargill filed its motion nearly one month after the Order was issued, well outside the strict time limits of Local Rule 7.1. In addition, Cargill does not argue that an intervening change of law has occurred, that new evidence has been discovered, or that a clear error of law has been committed, required on a motion for reconsideration in this Circuit. However, the Court offers the following clarification: it will not issue a declaratory judgment, nor will it conduct a review of HUD's action under the APA because Cargill lacks standing to make such a request. Cargill's alternative "theory" would not likely lead to redress because it is not a viable legal theory. The Mortgage Note granted Essex an express right to prepay the Loan upon HUD's override of the Prepayment Lockout. Essex's decision to exercise its contractual right cannot form the basis of a claim for breach of the implied covenant of good faith and fair dealing. See Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997) (implied duty cannot prevent exercise of express terms of contract). Even if HUD's decision to override the prepayment lockout were found to be

**NOT FOR PUBLICATION**

arbitrary and capricious, it was still a determination "that the prepayment [would] avoid a mortgage insurance claim" as required by the Mortgage Note, and triggered Essex's right to prepay the Loan.  Cargill's claim for implied claim for breach of implied covenant of good faith and fair dealing depends entirely on its allegations that the Private Defendants acted in bad faith when they convinced HUD to override the Prepayment Lockout.  Cargill does not seek money damages from HUD and could not recover from the Private Defendants for HUD's independent wrongdoing. It follows that Cargill lacks standing to request judicial review of HUD's actions under the APA.

**CONCLUSION**

It is, on this 23rd day of May, 2005,

ORDERED that Cargill's motion for reconsideration is DENIED.

<u>s/ William H. Walls, U.S.D.J.</u>